UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
COVINGTON

CIVIL ACTION NO. 10-47-GFVT

KURT DOYLE,                                                        PLAINTIFF,

V.                      MAGISTRATE JUDGE'S
                      REPORT AND RECOMMENDATION

MICHAEL J. ASTRUE, Commissioner
of Social Security,                                                  DEFENDANT.

## INTRODUCTION

The instant action is one for judicial review of a decision denying Plaintiff's application for supplemental security income benefits [SSI]. The matter is currently pending before the undersigned for issuance of a report and recommendation pursuant to Title 28 U.S.C. § 636(b)(1). [Record No. 15.] The parties having filed cross-motions for summary judgment, [Record Nos.12,14], the matter is now ripe for review.

## FACTUAL BACKGROUND

On August 29, 2007, Kurt Doyle [Doyle] protectively filed an application for SSI benefits, alleging an onset of disability on December 1, 2005, due to bipolar disorder, psychotic disorder, manic depression, hepatitis B and C, and arthritis. [Tr. 151, 197]. At a hearing before an Administrative Law Judge on December 12, 2008, his claim was denied. Upon review by the Appeals Council, his claim was remanded for further consideration on July 10, 2009. Following a supplemental hearing on September 30, 2009, the ALJ again found Doyle not disabled by written decision dated October 23, 2009. Further request for review by the Appeals Council was denied on

January 20, 2010, and this appeal followed.

LEGAL STANDARD

The general issue presented to the ALJ was whether Doyle was entitled to SSI benefits under the Social Security Act. In determining whether a claimant is disabled, an ALJ undertakes a five-step sequential evaluation process pursuant to 20 C.F.R. §§ 404.1520, 416.920. At the first step of the sequential evaluation process the ALJ considers whether a claimant has engaged in substantial gainful activity since the date of his application. At step two, the ALJ must determine whether the claimant suffers from medically determinable impairments that are severe within the meaning of the Regulations. See 20 C.F.R. §§ 404.1520(c), 404.1521, 416.920(c), 416.921. At step 3, an ALJ must find whether any medically determinable impairments meet or medically equal an impairment in the Listings. see generally 20 C.F.R. pt. 404, subpt. P, app. 1. At the fourth step, the ALJ must consider whether, in light of his residual functional capacity, the Plaintiff retains the ability to perform past relevant work. See 20 C.F.R. §§ 404.1560(b)(1), 416.960(b)(1). At the fifth and final step, relying on the testimony of the Vocational Expert ("VE") and taking into consideration Plaintiff's age, educational background, past relevant work experience, and residual functional capacity (hereinafter "RFC"), the ALJ must determine whether the Plaintiff is capable of making a successful adjustment to work existing in significant numbers in the national economy.

Judicial review of a decision by an ALJ is limited to determining whether the decision is supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); Wyatt v. Secretary of Health and Human Services, 974 F.2d 680, 683 (6th Cir. 1992); Abbott v. Sullivan, 905 F.2d 918, 922 (6th Cir. 1990); see also Jones v. Sec'y of Health & Human

Servs., 945 F.2d 1365, 1368-1369 (6th Cir. 1991). Substantial evidence is "such evidence as a reasonable mind shall accept as adequate to support a conclusion." It is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner v. Heckler, 745 F.2d 383, 388 (6th Cir. 1984).

Furthermore, the Commissioner's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." Casey v. Sec'y of Health & Human Servs., 987 F.2d 1230, 1233 (6th Cir.1993); see also Her v. Comm'r of Soc. Sec., 203 F.3d 388, 389-90 (6th Cir. 1999). The substantial evidence standard presupposes that there is a "zone of choice" within which the Commissioner may proceed without interference from the courts. Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986). If the Commissioner's decision is supported by substantial evidence, a reviewing court must affirm. Kirk v. Sec'y of Health & Human Servs., 667 F.2d 524, 535 (6th Cir. 1981), cert. denied, 461 U.S. 957 (1983); Studaway v. Sec'y of Health & Human Servs., 815 F.2d 1074, 1076 (6th Cir. 1987). Finally, "[t]he court may not try the case *de novo* nor resolve conflicts in evidence, nor decide questions of credibility." Bradley v. Sec'y of Health & Human Servs., 862 F.2d 1224, 1228 (6th Cir. 1988) (citing Gaffney v. Bowen, 825 F.2d 98, 100 (6th Cir.1987)).

## ANALYSIS

In evaluating Doyle's claim, the ALJ applied the five-step sequential evaluation process and found that he had not engaged in substantial gainful activity since the alleged onset of disability. [Tr. 18.] At the second step, the ALJ found that his medically determinable impairments of hepatitis B

and C; back and neck pain secondary to degenerative disc disease of the cervical and lumbar spine; polysubstance dependence (heroin, crack cocaine and methamphetamine) allegedly in remission; major depression; anxiety, not otherwise specified; and a personality disorder were severe within the meaning of the Regulations. See 20 C.F.R. §§ 404.1520(c), 404.1521, 416.920(c), 416.921. [Tr. 15]. At step three the ALJ found that his medically determinable impairments did not meet or medically equal an impairment in the Listings. See generally 20 C.F.R. pt. 404, subpt. P, app. 1. [Tr. 18.] At the fourth step, the ALJ found that, considering his residual functional capacity, Doyle was able to perform a limited range of light work. [Tr. 20]. Specifically, with respect to his mental limitations the ALJ described Doyle's residual functional capacity as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light and sedentary exertional work; the claimant can lift, carry, push, pull 20 pounds occasionally, 10 pounds frequently; sit/stand/walk 6 hours each in an 8-hour day; requires entry level work with simple, 1-2-3 step procedures, no frequent changes in work routines, no requirement for detailed or complex problems solving, independent planning or the setting of goals; should work in a solitary or object oriented environment with fewer than 3 coworkers, with only occasional interaction with co-workers, supervisors or the general public, not requiring extended conversation, coordinated activities, dispute resolution, etc.

[Tr. 20.]

Doyle's past relevant work was as a landscaper/laborer contractor, and warehouseman. "The vocational expert classified landscaper as medium to heavy and semiskilled and warehouseman as medium to heavy and unskilled." [Tr. 22]. On this basis, the ALJ found Doyle to be unable to perform past relevant work in light of his residual functional capacity. [Tr. 22]. However, at the fifth and final step the ALJ found that "[b]ased on the testimony of the vocational expert, the undersigned concludes that, considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work

4

that exists in significant numbers in the national economy." [Tr. 23]. On this basis, Doyle's claim was denied.

In support of his motion for summary judgment, Doyle now argues that the ALJ committed two errors, in particular: 1) the ALJ gave inappropriate weight to the treating psychiatrist, Dr Kline; and 2) the ALJ failed ". . . to utilize the entire opinion of Dr. Rosenthal . . . " therefore engaging in "cherry picking" parts of his opinions. [R. 12]. For clarity, this opinion will address Doyle's claims in the order presented.

## **I. DID THE ALJ ERR BY DISCREDING THE TREATING PSYCHIATRIST, DR. KLINE?**

Doyle argues that the ALJ failed to give proper consideration to the opinions of Dr. Kline, a treating psychiatrist, based upon his improper finding that Kline ignored Doyle's drug history. Doyle argues that his drug history was in fact addressed by Dr. Kline where the physician noted that although the drug problems were in complete sustained remission, Doyle's condition is so severe that illegal drugs would have virtually no effect on his condition. In discussing the limitations he thought appropriate for Doyle, Dr. Kline testified:

> Q. Ok now we will go back to this form if you can just tell the Court why you graded him in that particular category?
>
> A. Ok the ability to follow work rules. First there was nothing in these 8 items that I rated any better than fair. He probably could follow work rules; he could probably and at best fairly relate to co-workers. Deal with the public I thought would be poor. Use good judgment fair at best. Interact with supervisors fair to poor.
>
> Q. Is that fair to poor?
>
> A. Yes. Deal with work stresses poor. Function independently fair at best. Maintain attention and concentration poor. All of these relate to the severity of his

mental illness. This is a gentleman who has delusions of persecution and auditory hallucinations.

[Tr. 327].

In addition, regarding Doyle's polysubstance abuse, Dr. Kline stated:

Q. If Mr. Doyle were using unprescribed drugs, are you able to give an opinion as to what his limitations are?

A. Yes I believe in the case of Mr. Doyle that depending on the substance that is being abused it would have little if any effect over and above the severe metal [sic] illness he already has. In other words without any substances at all he would have a severe mental illness.

[Tr. 331].

The weight to be given to the opinions of a treating physician compared with the weight to be given to those of an examining or consultative physician depends on several factors. "Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you." 20 C.F.R. § 404.1527(d)(1). Further, all of the general rules about the weight to be given to a particular class of physicians' medical opinions presumes that the physician's opinion is based on objective medical findings, or what the regulations call "supportability". See 20 C.F.R. § 404.1527(d)(3); Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Other factors which are to be considered in deciding how much weight to afford to a medical opinion are consistency, specialization, and the length, nature, and extent of the treating relationship, if one exists. See 20 C.F.R. § 404.1527(d). Ultimately, however, "the determination of disability is the prerogative of the [Commissioner], not the [ ] physician," and the Commissioner is not bound by the physician's medical opinions. Houston, 736 F.2d at 367.

In the instant matter, even assuming that the ALJ's gave less weight to Kline due to his finding that the physician ignored Doyle's drug history, the record reflects that the ALJ supported this decision with substantial evidence of record. For instance, in determining the weight that should be given the opinions of Dr. Kline, the ALJ remarked that the physician did ignore Doyle's significant drug history, but also noted that Kline's medical assessment is totally inconsistent with objective medical evidence of record, " . . . including his own treatment records that show frequent 'no shows' for appointments and improvements in mood and in hearing voices, the claimant's activities of daily living which included the fact that Doyle is divorced with three children, living with his girlfriend and their baby until recently. [Tr. 19]. The ALJ found, based on the record, the following activities of daily living: he spends his day watching television, listening to the radio, and sitting around his sister's house; does not drive, but receives rides from family members or walks; cooks, reads, and watches television. [Tr. 19]. Moreover, Dr. Kline notes that the claimant "can control the voices." [Tr. 22]. In fact, Dr. Kline's records repeatedly state/show that Doyle was alert and oriented, cooperative, and appropriately dressed with normal speech and thought processes, appropriate thought content, and had a blunted or constricted affect. [Tr. 1027, 1029, 1033, 1039, 1047, 1076, 1102, 1104, 1106, 1108]. In addition, Kline did not consider Doyle to be a risk. [Tr. 1102, 1104, 1106, 1026, 1029, 1033, 1045, 1047, 1051]. The medications prescribed to Doyle were considered beneficial and Dr. Kline notes that he showed progress as expected. [Tr. 1027, 1029, 1033, 1102, 1027, 1029, 1033, 1045, 1047, 1102, 1108]. Although Dr. Kline reported that in order to work, Doyle would require dosages that would cause debilitating side effects, no such side effects were noted. [Tr. 329].

Having reviewed the record, the Court finds the ALJ's decision not to accord greater weight

7

to Dr. Kline's opinion is supported by the medical evidence of record, and the ALJ properly articulated reasons for discrediting Dr. Kline's opinions.

## II. DID THE ALJ COMMIT ERROR BY FAILING TO CONSIDER THE ENTIRE OPINION OF DR. ROSENTHAL?

Doyle argues that the ALJ improperly selected only portions of Dr. Rosenthal's opinions, specifically those portions where the physician places only moderate limits on Doyle's ability to sustain attention and concentration necessary to complete daily work tasks. [R. 12].

Regarding Dr. Rosenthal, the ALJ found: "A consulting psychologist, James J. Rosenthal, Psy.D. assessed the claimant has a moderate impairment in his ability to relate to bosses, coworkers , and the general public. The Administrative Law Judge is therefore persuaded that he has "moderate" limitations in this area." [Tr. 19]. In addition, Judge Reynolds stated that Rosenthal " . . . assessed the claimant has a [sic] no impairment in his ability to understand, remember, and follow simple one or two step job instructions, and a moderate impairment in his ability to sustain attention and concentration to complete daily work tasks. The Administrate Law Judge is therefore persuaded that he has "moderate" limitations in this area." [Tr. 19]. Finally, in addressing Doyle's residual functional capacity, Judge Reynolds stated: "In sum, the above residual functional capacity assessment is supported by the psychological consultative examination who assessed the claimant has no impairment in his ability to understand, remember, and follow simple one or two step job instructions (Exhibit 6F), the All Systems consultative examination that assessed no restriction for exertional work-related activity (Exhibit 5F), and the medical evidence of record that shows a

8

lengthy criminal history and addictions to crack, heroin and methamphetamine and that he is still engaging in drug seeking behavior. [Tr. 22].

In presenting this argument, Doyle asserts that the ALJ ignored other opinions including Rosenthal's statement that Doyle's ability to tolerate the stress of day to day employment was poor, that he would be easily agitated on jobs and might even walk off if angered. [R. 12]. Doyle argues that when these opinions were offered to the vocational expert, that individual testified that there would be no jobs Doyle could maintain. [R. 12, TR. 55].

Doyle cannot establish a lack of substantial evidence by merely pointing to evidence of record that supports his position and contradicts the ALJ's findings. See Gray v. Astrue, 2010 U.S.Dist. LEXIS 51387 at *18. "Rather, [Doyle] must demonstrate that there is not sufficient evidence in the record that would allow a reasoning mind to accept the ALJ's conclusion." Id. at *18. Although Doyle argues that the ALJ "cherry picked" opinions from Dr. Rosenthal, he in no way argues that the opinions are unsupported by the evidence of record. [R. 12, p. 14]. "An ALJ's decision will be affirmed if it is supported by substantial evidence. It is immaterial if substantial evidence also supports a contrary position." Id. at *17 (citing underline these cases Kirby v. Comm'r of Soc. Sec., 37 Fed. Appx. 182, 183 (6th Cir. 2002); Foster v. Halter, 279 F.3d 348, 353 (6th Cir. 2001); Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997); Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986)).

A review of Dr. Rosenthal's examination in the instant action reveals objective evidence to support the ALJ's conclusions, including the fact that Doyle was neat and appropriately dressed with normal speech volume and pace, exhibiting appropriate, logical and relevant thought content. [Tr.

769]. He exhibited no signs of disorganized or tangential thinking, and, although he exhibited a constricted and dysphoric mood, and was depressed, he reported no suicidal ideation. [Tr. 769]. Doyle was tense and on edge, without panic symptoms, phobias, fears, obsessions, compulsions or hallucinations, claiming to hear voices in his head telling him what to do. [Tr. 769]. He explained that he thought the voice was "possibly his own voice, like talking to myself" [Tr. 769]. Doyle was alert and oriented to time, place, person and situation with no appreciable limitations on insight or judgment. [Tr. 769-770]. Rosenthal stated that Doyle could understand, remember and follow simple, 1-2 step instruction, as he had no problem understanding directions during the interview, and proposed that Doyle was moderately impaired in his ability to relate to superiors, coworkers and the public, and would experience difficulty working with a moderate to large number of employees, being best suited to work alone or with few coworkers. [Tr. 771]. Rosenthal stated that Doyle's ability to sustain attention and concentration to complete daily tasks was moderately impaired and that his ability to tolerate the stress of day to day employment appeared poor due to being easily agitated on jobs, to the extent of walking off if he became angry. [Tr. 771]. The prognosis for change was considered fair with respect to depression and anxiety, and guarded with respect to antisocial actions. [Tr. 771]. His Global Assessment of Functioning score was 51, indicating moderate symptoms or moderate difficulty in social, occupation or school functioning. [R. 10].

Therefore, the record shows that the ALJ appropriately relied on substantial evidence of record to support his conclusions, and Doyle has shown no error.

## CONCLUSION

For the foregoing reasons, it is recommended that the Plaintiff's Motion for Summary Judgment [R. 12] be DENIED, the Defendant Commissioner's Motion for Summary Judgment

10

[R.14] be GRANTED, and that Judgment be entered affirming the final decision of the Commissioner.

Specific objections to this Report and Recommendation must be filed within fourteen (14) days from the date of service thereof or further appeal is waived. United States v. Campbell, 261 F.3d 628, 632 (6th Cir. 2001); Bituminous Cas. Corp. v. Combs Contracting Inc., 236 F. Supp. 2d 737, 749-750 (E.D. Ky. 2002). General objections or objections that require a judge's interpretation are insufficient to preserve the right to appeal. Cowherd v. Million, 380 F.3d 909, 912 (6th Cir. 2004); Miller v. Currie, 50 F.3d 373, 380 (6th Cir. 1995). A party may file a response to another party's objections within fourteen (14) days after being served with a copy thereof. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).

Signed January 7, 2011.

Signed By:
*Edward B. Atkins* EBA
United States Magistrate Judge